IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **MARGARITA JORDAN,** | § | |
| Plaintiff, | § | CA No. _____ |
| | § | |
| v. | § | |
| | § | JURY DEMANDED |
| **NATIONAL OILWELL VARCO, INC.** | § | |
| **(NOV, INC.) and NATIONAL** | § | |
| **OILWELL VARCO, LP,** | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

## 1. PRELIMINARY STATEMENT

1.1. Plaintiff demands a jury for any and all issues triable to a jury. This action seeks compensatory, actual/economic, and punitive damages; and costs and attorneys' fees for the claims suffered by Plaintiff, MARGARITA JORDAN, due to NATIONAL OILWELL VARCO, INC. (NOV, Inc.) and NATIONAL OILWELL VARCO, LP (referred to herein as "Defendant" or "NOV") taking adverse employment actions against her ultimately resulting in the wrongful termination of her employment as explained herein.

1.2 This action arises under the Texas Commission on Human Rights Act ("TCHRA), Title VII of the Civil Rights Act of 1964, the Family and Medical Leave Act, and the Americans with Disabilities Act (as amended) ("ADA").

## 2. JURISDICTION

2.1. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 (federal question) since Plaintiff is bringing this claim, in part, pursuant to the ADA and FMLA.

2.2.    Costs and attorney's fees may be awarded pursuant to 42 U.S.C. § 12205 and Rule 54, FRCP.

2.3.    Compensatory damages may be awarded pursuant to 42 U.S.C. § 198la(a)(1) and 42 U.S.C. § 198la(a)(2)(b)(1).

2.4.    Punitive damages may be awarded pursuant to 42 U.S.C. § 1981a(a)(1) and 42 U.S.C. § 1981a(a)(2)(b)(1).

### 3.  VENUE

3.1.    Venue of this action is proper in this court, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

### 4.  PARTIES

4.1.    Plaintiff is a former employee of Defendant and resides in Spring, Harris County, Texas.

4.2.    Defendant is an employer qualified to do business in Texas.

4.3.    Defendant NATIONAL OILWELL VARCO, INC. can be served by serving its registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

4.4.    Defendant NATIONAL OILWELL VARCO, LP can be served by serving its registered agent, CT Corporation System, 1999 Bryan Street, Ste 900, Dallas, Texas 75201.

### 5.  STATEMENT OF FACTS

5.1    Plaintiff was employed by NOV for over 11 years as an EDI Billing Specialist, primarily working out of 500 Conroe West Park Dr., Conroe, Texas.

5.2    Throughout her tenure, Plaintiff consistently met performance expectations and received annual raises based on a structured point system. However, her employment was abruptly terminated on January 16, 2025, while Plaintiff was on medical leave and right after she

*Plaintiff's Original Complaint*                                                                                 2

requested reasonable accommodations and FMLA forms for her present health condition(s) and disabilities.

5.3     In 2017, when Defendant's department underwent a reduction in force, multiple supervisors specifically asked Plaintiff to remain and offered her a raise to retain her, demonstrating that Plaintiff's work was highly valued and undermining any suggestion that Plaintiff had a history of recurring performance deficiencies.

5.4     Plaintiff race and national origin is Hispanic and Uruguayan. In previous performance reviews, her supervisor Ms. Cathy Bright stated that Plaintiff was held to "different standards" than her peers. Additionally, in a 2016 incident, one of Plaintiff's colleagues made a discriminatory remark in front of supervisors, stating that Plaintiff only had a job because of government protections, referring to her national origin and race.

5.5     Although Plaintiff attempted to escalate this incident to Human Resources (HR), Plaintiff was advised to ignore the comment, and no corrective action was taken. When Plaintiff later raised concerns of racial discrimination with HR representative Ms. Molly Ball in 2024, Plaintiff was reprimanded and chastised for using the word "discrimination" but subsequently received an apology from HR personnel. Despite this, no formal investigation or resolution occurred.

5.6     Beginning in mid-2024, Plaintiff's supervisor, Cathy Bright, began holding Plaintiff to standards not applied to her peers, who were outside of her protected class based on race and national origin. On June 14, 2024, Plaintiff received a verbal warning relating to a billing error, which was presented to Plaintiff as supportive coaching rather than formal discipline. Similar billing errors, including duplicate invoices and credits, occurred throughout Defendant's billing department, including by Ms. Bright herself, but the level

of discipline applied to Plaintiff (or discipline being rendered at all)  when compared to her counterparts, under the same or similar circumstances was different.

5.7     On September 4, 2024, a Human Resources Business Partner delivered Plaintiff a Final Written Warning for the same purported performance issues. During that meeting, Plaintiff again objected that she was being held to "different standards" than her peers and stated that she believed she was being discriminated against. Plaintiff's concern was initially dismissed, but Plaintiff was subsequently and repeatedly apologized to by Defendant's personnel, confirming that her complaint of discrimination was valid. As part of this same disciplinary action, Defendant informed Plaintiff that she was no longer eligible to work from home under Defendant's Flexible Workplace Arrangement Program.

5.8     Notwithstanding Defendant's stated revocation of Plaintiff's remote-work privileges, Ms. Bright continued to assign Plaintiff critical work to be performed from home during the December 2024 holiday billing period, including high-volume invoices for the Permian Basin region. Defendant's decision to entrust Plaintiff with this essential remote work directly contradicts its stated rationale that Plaintiff's performance was too deficient to permit her to work from home.

5.9     In early January 2025, Plaintiff suffered a medical collapse due to severe anemia and Atrial Fibrillation (AFib), requiring hospitalization for two days at Memorial Hermann - The Woodlands Medical Center.  Upon discharge, Plaintiff's cardiologist determined that she had underlying medical conditions causing her illness.  Plaintiff's treating physicians advised that she work from home while undergoing further evaluation by her primary care physician ("PCP"). Plaintiff had previously worked from home two (2) days per week, making remote work a feasible and reasonable accommodation.

5.10    Plaintiff's severe anemia and Atrial Fibrillation were serious medical conditions that substantially limited one or more of Plaintiff's major life activities. Plaintiff's primary care physician withheld clearance for Plaintiff to return to work until additional bloodwork and evaluation could be completed.

5.11    Plaintiff's PCP scheduled a follow-up appointment for January 24, 2025, and requested an FMLA form from NOV to assess her ability to return to work. While still hospitalized, Plaintiff immediately informed her direct supervisor, Cathy Bright, and HR representatives Ms. Ball and Samantha Garrison, via emails, Teams chat, and text messages, of her medical condition. She also informed them of her physician's recommendation to work from home and the necessity of the presentation of the required FMLA form.

5.12    Despite multiple requests, NOV did not provide the required FMLA paperwork. Plaintiff was subsequently informed that Plaintiff could not work from home until Plaintiff received full medical clearance from her PCP and was directed to consult with HR.

5.13    While Plaintiff was still on medical leave and awaiting her doctor's clearance, on January 16, 2025, Plaintiff received a phone call from Ms. Bright, Ms. Ball, and Ms. Garrison, informing her that she was being terminated. This decision to terminate her employment was made while Plaintiff was actively seeking medical approval to return to work and still awaiting the requested FMLA forms.

5.14    During the termination call, Ms. Bright referenced an isolated incident involving an incorrect PDF attachment on an invoice, which Plaintiff had already promptly corrected and reported to her supervisor while working remotely during the 2024 holiday billing cycle, and which had not resulted in any material disruption to Defendant's operations.

5.15    The events explained herein caused Plaintiff to lose her main source of income used to

provide for herself and her family and caused serious mental and emotional distress. The termination has left her in a difficult position, both economically, physically and mentally.

## 6. CONDITIONS PRECEDENT

6.1　All conditions precedent to jurisdiction have occurred or been complied with.

6.2　Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

6.3　This lawsuit was filed within ninety (90) days of Plaintiff receiving her Notice of Right to Sue from the EEOC.

## 7. CAUSES OF ACTION

### *Disability/Perceived Disability Discrimination and Failure to Reasonably Accommodate (ADA and TCHRA)*

7.1　Plaintiff incorporates by reference all the foregoing allegations in each of the paragraphs above as if fully set forth herein.

7.2　Plaintiff was a member of a protected class as a qualified employee with a disability/perceived disability.

7.3　Plaintiff suffered from a disability/perceived disability.

7.4　Plaintiff requested reasonable accommodations in the form of medical leave and work from home accommodations.

7.5　Plaintiff suffered an adverse action when she was terminated after Defendant learned of her disability or perceived her as a disabled employee.

7.6　Defendant failed to engage in the interactive process and failed to reasonably accommodate Plaintiff's disability.

7.7    Plaintiff alleges Defendant violated the ADA and the TCHRA when Defendant took adverse actions against Plaintiff, including her termination.

7.8    Plaintiff suffered economic and compensatory damages as a result of the adverse actions taken against her.

### *Retaliation*
### *(ADA/TCHRA/Title VII)*

7.9    Plaintiff incorporates by reference all the foregoing allegations in each of the paragraphs above as if fully set forth herein.

7.10    Plaintiff engaged in protected activity when she complained of race, national origin and disability discrimination and requested reasonable accommodations.

7.11    Plaintiff was terminated after she engaged in protected activity.

7.12    Plaintiff suffered adverse actions causally related to her engaging in protected activity when her employment was terminated.

7.13    Plaintiff was treated less favorably than employees who had not requested leave and/or was terminated because she engaged in protected activity under the ADA/Title VII/TCHRA in reporting discrimination based on protected classes.

7.14    Plaintiff has suffered economic harm as well as compensatory damages due to Defendant's violation of the ADA, TCHRA, and Title VII in wrongfully and discriminatorily terminating her employment.

### *Race and National Origin Discrimination*
### *(Title VII and TCHRA)*

7.15    Plaintiff hereby incorporates and realleges each and every paragraph of the facts.

7.16    Plaintiff is a member of a protected class under Title VII based on her race and national origin (Hispanic, Uruguayan employee).

7.17    Plaintiff suffered adverse employment actions when her employment was terminated.

7.18    Plaintiff was replaced by someone outside her protected class, was treated less favorably than similarly situated employees outside of her protected class, and/or her race and/or national origin were motivating factors in her termination.

7.19    Plaintiff has suffered economic harm as well as compensatory damages due to Defendant's violation of Title VII and the TCHRA in wrongfully and discriminatorily terminating her employment.

### *FMLA Interference*

7.20    Plaintiff incorporates by reference all the foregoing allegations in each of the paragraphs above as if fully set forth herein.

7.21    The Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2620 was enacted "to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. § 2601(b)(2). Congress enacted the FMLA in response to concerns over "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." *Miller v. AT & T Corp.*, 250 F.3d 820, 833 (4th Cir. 2001) (internal quotations omitted).

7.22    "The FMLA has two distinct sets of provisions, which together seek to meet the needs of families and employees and to accommodate the legitimate interests of employers." *Hunt v. Rapides Healthcare Sys.*, LLC, 277 F.3d 757, 763 (5th Cir. 2001) (citing *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999); *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998)).

7.23   The first set of provisions are prescriptive: they create a series of substantive rights, namely, the right to take up to twelve weeks of unpaid leave under certain circumstances. Id.

7.24   The second set of provisions are proscriptive: they bar employers from penalizing employees and other individuals for exercising their rights. *Id.*; *see also* 29 U.S.C. § 2615(a)(1)-(2); *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999); *Bocalbos*, 162 F.3d at 383 ("[T]he Act protects employees from interference with their leave as well as against discrimination or retaliation for exercising their rights.") (citations omitted*); Faris v. Williams WPC-I, Inc.*, 332 F.3d 316, 320-22 (5th Cir. 2003) (holding that there is a distinction between substantive FMLA rights and causes of action for retaliation designed to protect those rights).

7.25   Defendant violated both the prescriptive and proscriptive provisions of the FMLA.

7.26   Under 29 U.S.C. § 2615(a)(1), an employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" guaranteed by the FMLA. *See Nero v. Industrial Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999). A Plaintiff "must at least show that [the employer] interfered with, restrained, or denied their exercise or attempt to exercise FMLA rights, and that the violation prejudiced her." *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013).

7.27   "In order to state a prima facie case of interference under the FMLA, an employee must demonstrate only that they were entitled to a benefit that was denied." *Anderson v. New Orleans Jazz & Heritage Festival & Found., Inc.*, 464 F. Supp. 2d 562, 567 (E.D. La. 2006) (citing *Strickland v. Water Works & Sewer Board*, 239 F.3d 1199, 1206-07 (11th Cir. 2001) (citing *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353-54 (11th Cir. 2000); *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999)).

7.28   The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of any right provided for by the Act. 29 U.S.C. § 2615(a)(1). An employee's right to reinstatement is a right protected by the FMLA. 29 U.S.C. § 2614(a)(1).

7.29   Defendant interfered with Plaintiff's right to reinstatement and the exercise of or the attempt exercise of her rights under the FMLA.

7.30   Defendant denied Plaintiff her right to reinstatement when Defendant terminated her employment after she requested the forms needed to exercise her FMLA leave rights and she was terminated after making that request and informing Defendant of her intention to take FMLA leave.  Defendant violated the FMLA's mandate that an employer not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" guaranteed by the FMLA. 29 U.S.C. § 2615(a)(1); *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999).

### FMLA Retaliation

7.31   Plaintiff incorporates by reference all the foregoing allegations in each of the paragraphs above as if fully set forth herein.

7.32   To make out a prima facie case for FMLA retaliation, a plaintiff must show that: "(1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave." *Hunt*, 277 F.3d at 768 (internal citation omitted). After the plaintiff does so, the same burden-shifting scheme applies as does to the FMLA interference claim. *Hester*, 11 F.4th at 305.

7.33   The third element can be satisfied by showing that the plaintiff "was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was

made because [s]he sought protection under the FMLA." *Mauder v. Metropolitan Transit Auth. of Harris County, Texas*, 446 F.3d 574, 583 (5th Cir. 2006) (quoting *Hunt*, 277 F.3d at 768).

7.34   A plaintiff need not prove that the exercise of FMLA rights was the sole cause of the unfavorable treatment; "[t]he plaintiff is, however, required to show that the protected activity and the adverse employment action are not completely unrelated." *Mauder*, 446 F.3d at 583.

7.35   Temporal proximity alone can establish causal connection, the third element of an FMLA retaliation claim. *Id.* "Close timing between an employee's protected activity and an adverse action against her may provide the causal connection required to make out a prima facie case of retaliation*." Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001). A "time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes." *Id.* (reversing summary judgment on this basis); *Cantu v. Vitol, Inc.*, No. H-09-0576, 2011 WL 486289, *10 (S.D. Tex. Feb. 7, 2011) (Rosenthal, J.) (noting that "the Fifth Circuit has found temporal proximity of up to four months sufficient to show a causal link.").

7.36   Plaintiff (1) requested leave under the FMLA; (2) was terminated before her return; (3) her termination was causally connected to her leave or request for leave; and (4) she was treated less favorably than employees who did not take FMLA leave. Furthermore, Defendant's reasons for terminating her are pretextual. Therefore, Plaintiff makes a case of FMLA retaliation.

## 8.   **PRAYER**

WHEREFORE, Plaintiff prays the Court order to award such relief including the following:

8.1.1    Award Plaintiff actual damages;

8.1.2    Order Defendant to pay Plaintiff back pay and front pay and benefits;

8.1.3    Award Plaintiff compensatory damages for mental anguish;

8.1.4    Award Plaintiff punitive damages to be determined by the trier of fact;

8.1.5    Grant Plaintiff pre-judgment and post-judgment interest;

8.1.6    Order Defendants to pay Plaintiff's costs and attorney's fees in this action; and,

8.1.7    Order and grant such other relief as is proper and just.

Respectfully Submitted,

*/s/ Tracey D. Lewis*
Tracey D. Lewis
USDC/TX No. 212007
State Bar No. 24090230
Jacques P. Leeds
USDC SD/TX No. 2526879
State Bar No. 24092678
**LEEDS LAW FIRM, PLLC**
396 W. Greens Rd. Ste. 200
Houston, TX 77067
Telephone: 713-492-2906
Facsimile: 346-355-7847
tracey@jleedslawfirm.com
jacques@jleedslawfirm.com
*Attorneys for Plaintiff*

*Plaintiff's Original Complaint*    12